IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-CV-207-BO-BM

| | | |
|---|---|---|
| ELLEN BRABO,<br>*individually and d/b/a The Ell Hotel,*<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WASHINGTON,<br>*a political subdivision of the State of North Carolina*, and DONALD SADLER *in his official and individual capacities*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER** |

This cause comes before the Court on defendants' motions to dismiss for failure to state a claim filed December 22, 2025 [DE 17] and December 23, 2025 [DE 19]. Plaintiff has responded to both motions [DE 23; DE 24]. Defendants filed replies [DE 28; DE 30]. Both motions are ripe for disposition. For the reasons explained below, the Court DENIES IN PART and DEFERS IN PART Donald Sadler's motion to dismiss [DE 17]; and the Court DENIES the City of Washington's motion to dismiss [DE 19].

## I. BACKGROUND

Plaintiff, who is the current mayor of the City of Washington, North Carolina, and the owner of a bed & breakfast, filed this action against the City of Washington and the City's former mayor, Donald Sadler. [DE 1]. Plaintiff filed the complaint in this Court on October 28, 2025. *Id.* The complaint alleges constitutional violations, state law violations, and the following facts.

In the spring of 2021, plaintiff purchased the historic Bowers-Tripp House located at 1040 N. Market St., Washington, NC 27889, which is listed on the National Register of Historic Places. *Id.* at 2. Plaintiff purchased the House with the intention of renovating it and developing it into a bed & breakfast. *Id.* Although plaintiff purchased the House in her own name, she operates the business under the assumed name, "The Ell Hotel." *Id.*

A City Board of Adjustment meeting regarding plaintiff's request for a special use permit occurred on July 15, 2021. *Id.* at 3. A City resident publicly voiced support for The Ell Hotel, stating, "Having this Bed & Breakfast on North Market Street will just amplify the effects of those that are already in place. We hope that you will grant this request. I know that [plaintiff] likes to have a lot of events, especially around the holidays." [DE 1] at 3.

That same day, the City of Washington issued a special use permit for plaintiff to operate The Ell Hotel as a "tourist home (bed & breakfast)." *Id.* at 2; [DE 1-2]. Her permit listed the City Zoning Ordinance's definitions for the terms "tourist home" and "bed & breakfast" as follows:

> Sec. 40-25. - Words and terms defined:
>
> *Tourist homes* means a dwelling wherein rooms are rented to provide overnight accommodations for transient guests; provided that the character of the dwelling is not changed and, in connection therewith, there is no display, no stock in trade nor commodity other than meals sold on the premises, and no person not a resident on the premises is employed specifically in connection with the accommodation of tourists.
>
> *Bed and Breakfast* means a private home offering bed and breakfast accommodations to twelve (12) or fewer persons per night for a period of less than one (1) week. See Hotel or Motel.

[DE 1-2] at 4.

After receiving the permit, plaintiff began renovations on the Bowers-Tripp House. [DE 1] at 3. Plaintiff communicated openly with the City of Washington about her plan to host weddings, showers, fundraisers, and clubs at The Ell Hotel. *Id.* Her purpose in doing so was to put The Ell

Hotel "on the map" as a tourist destination and to entice future overnight bookings. *Id.* At no time during the planning of The Ell Hotel did the City advise plaintiff these types of events were not allowed. [DE 1] at 2.

On December 11, 2021, The Ell Hotel hosted a Christmas open house to show the progress on the renovations to the community. *Id.* Plaintiff marketed the event with yard signs and posters around the City. *Id.* at 3. City staff were aware of the event and did not issue a citation. *Id.* In fact, an employee of the City of Washington Tourism Department attended the event. *Id.*

On June 18, 2022, The Ell Hotel hosted a grand opening party attended by over 100 people, including the City Manager, a City Council member, the Director of the Chamber of Commerce, and the same employee of the Tourism Department. *Id.* at 4. The City did not issue a citation. [DE 1] at 4.

From August 2022 through February 2023, The Ell Hotel hosted at least 42 ticketed or contracted weddings, bridal showers, yoga classes, baby showers, political fundraisers, and book clubs, including a holiday tour in which hundreds of people purchased tickets to visit the property. *Id.* City staff were aware of the activities and events hosted during those years and did not issue a citation. *Id.* Moreover, none of the weddings, showers, yoga classes, fundraisers, or club meetings resulted in any public complaints. *Id.*

For unknown reasons, in March of 2024, City staff presented a text amendment to the Planning Board to amend the City Zoning Ordinance's definition of "bed and breakfast" and to remove "tourist home" from the Ordinance. *Id.* In May of 2024, the City Planning Office presented the proposed text amendment to City Council for a vote, and it passed unanimously. *Id.* at 5. The text amendment modified the definition of "bed and breakfast" in Section 40-25 to state:

> *Bed and breakfast (also formerly known as tourist homes)* means an owner occupied single-family dwelling offering overnight accommodations for transient

> guests, for a period of less than one (1) week. The occupancy is limited to twelve (12) guests per night, and the character of the dwelling must be maintained. Signs shall be in compliance with chapter 40, article XVI of this Code. The business cannot sell merchandise other than meals on the premises or employ more than one (1) part-time dedicated staff beyond the owner(s). **Private indoor only event services can be held exclusively for overnight occupancy guests, with an allowance of one (1) additional person per guest, up to a maximum of twenty-four (24) people. Outdoor events are not allowed.**

Washington, N.C., Code of Ordinances § 40-25 (2024) (emphasis added in bold). Neither The Ell Hotel nor any other bed & breakfast within the City of Washington was given notice of the text amendment's proposal or its passage. [DE 1] at 5–6.

Meanwhile, plaintiff participated in local politics. *Id.* at 6. She was the local coordinator for a grassroots organization that opposes the North Carolina Department of Transportation's ("NCDOT's") plan to widen 15th Street within the City. *Id.* Mayor Donald Sadler and the City Council are on record as being in favor of the NCDOT's plan. *Id.* On April 14, 2025, plaintiff spoke at a City Council meeting and presented a petition bearing 485 signatures in opposition to that plan. *Id.*

On April 16, 2025—just two days after speaking at the City Council meeting—The Ell Hotel received a notice of potential violation from the City of Washington Planning Office. *Id.* On April 30, 2025, plaintiff provided evidence refuting the violation. [DE 1] at 7. On or about May 8, 2025, The Ell Hotel received a "Courtesy Zoning Notification" from the City of Washington Planning Office, admonishing against plaintiff's advertisement for events that could accommodate up to fifty people. *Id.*; [DE 50-9] at 19.

During a May 12, 2025, City Council meeting, Mayor Donald Sadler asked the City Manager to investigate The Ell Hotel's parking and report back within ten days. [DE 1] at 7.

On May 21, 2025, plaintiff and another bed & breakfast owner attended a Tourism Development Authority Meeting to bring awareness to the impact the Ordinance changes would

have on the bed & breakfasts within the City. *Id.* When the other owner rose to speak during the public comment portion of the meeting, Mayor Donald Sadler cut him off and refused to hear him speak. *Id.*

On June 23, 2025, the City issued a second formal notice of violation for a family reunion hosted at The Ell Hotel on June 14, 2025. *Id.*; [DE 50-9] at 26–28.

Plaintiff decided to challenge Mayor Sadler by running in the November 2025 election. [DE 1] at 7. On July 1, plaintiff and Mayor Sadler appeared for a "photo op" at the grand opening of an ice cream shop. *Id.* at 8. On July 2, plaintiff hung her first campaign banner in the City. *Id.* That night, Mayor Sadler posted the photo from the photo op on his official Facebook page as Mayor, but he had edited plaintiff out of the picture. *Id.* When residents of the City commented, questioning Mayor Sadler's decision to remove plaintiff from the photo, Mayor Sadler blocked those residents from commenting further. *Id.*

Plaintiff filed her candidacy for mayor on July 8, 2025. *Id.* Mayor Sadler promptly commenced a campaign of retaliation against plaintiff and The Ell Hotel to intimidate his political opponent. [DE 1] at 7. On or about the same day, after plaintiff filed her candidacy, Mayor Sadler and the City ordered police surveillance of plaintiff, which lasted from July 8 to July 20, 2025. *Id.* at 8–10.

On July 31, 2025, the City sent out a notice that it was intending to hold an evidentiary hearing on August 14, 2025, regarding whether to revoke The Ell Hotel's special use permit. *Id.* at 9. During that hearing, Detective Andrew Dawley from the City's Police Department testified under oath that he had never conducted private surveillance for the City's Ordinance enforcement but did so regarding plaintiff and The Ell Hotel. *Id.* The City indefinitely tabled the revocation

decision until after the November 2025 mayoral election. [DE 1] at 9. This concludes the factual allegations set forth in the complaint.

Plaintiff filed this lawsuit on October 28, 2025 [DE 1]. Her complaint sets forth claims against defendants pursuant to 42 U.S.C. § 1983 and North Carolina law, including: (1) First Amendment retaliation; (2) due process, void for vagueness; (3) due process liberty interest in business operations; (4) commercial speech violation; (5) equal protection; (6) First Amendment violation of free speech; and (7) ordinance preemption under North Carolina law. *Id.* at 10–23.

In November of 2025, plaintiff won the City of Washington's mayoral election, defeating Donald Sadler. [DE 56] at 1. Plaintiff was sworn into office on December 10, 2025. *Id.*

The next day, the Board of Adjustment voted to continue for four more months the hearing on the revocation of plaintiff's special use permit, adding that the City and plaintiff should actively confer in the interim for the purposes of brainstorming some mutually agreeable changes to the definition of bed & breakfast in the City's Ordinance. *Id.* at 1–2. Following the hearing, plaintiff proposed a settlement to the City. *Id.* at 2. The City never responded to the settlement and never engaged plaintiff in any discussions about changes to the Ordinance. *Id.*

On December 22, 2025, Defendant Donald Sadler filed a motion to dismiss for failure to state a claim [DE 17]. On December 23, 2025, Defendant City of Washington also filed a motion to dismiss for failure to state a claim [DE 19].

On May 7, 2026, the Board of Adjustment reopened the hearing on the revocation of The Ell Hotel's special use permit. [DE 56] at 2–3. The Board of Adjustment refused to allow plaintiff to present any additional evidence to rebut against alleged zoning violations. *Id.* at 2. Ultimately, the Board voted unanimously to revoke plaintiff's permit and to deny plaintiff's appeal of the violations. *Id.* at 3.

The City's Ordinance requires a written decision before a revocation is effective. *Id.* None had yet been written in plaintiff's case. *Id.* Despite this, one day after the Board's vote, the City entered The Ell Hotel, where plaintiff's family resides, to enforce the revocation. *Id.*

On June 2, 2026, plaintiff filed a motion for leave to file supplemental pleading [DE 43], which would allege additional transactions, occurrences, and events that occurred since she filed her complaint on October 28, 2025. It also added three more claims. On the same day, plaintiff filed a motion for preliminary injunction pursuant to Federal Rule of Civil Procedure 65, to maintain the status quo and enjoin the City from revoking plaintiff's permit or interfering with the operations of The Ell Hotel [DE 45].

On June 9, 2026, a hearing was held before the undersigned in Elizabeth City, North Carolina, on the matter of preliminary injunction. At the conclusion of the hearing, the Court indicated that the preliminary injunction would be granted and that a written order would be forthcoming. *See* [DE 51] "Minutes from Motion Hearing"; [DE 52] "Transcript of Preliminary Injunction Hearing" at 61–62. On July 17, 2026, the Court entered an order granting plaintiff's motion for leave to file a supplemental complaint and plaintiff's motion for preliminary injunction [DE 55].

On July 30, 2026, the City of Washington filed a motion to dismiss plaintiff's supplemental complaint [DE 57]. On July 31, 2026, Donald Sadler filed a motion to dismiss for failure to state a claim [DE 59]. Plaintiff responded to those motions on August 20, 2026 [DE 65]. Those motions are still pending as of the entry of this order.

On August 17, 2026, defendants filed a notice of appeal regarding the Court's order that granted plaintiff's motion for preliminary injunction [DE 55].

## II. LEGAL STANDARD

Generally, "a duly filed notice of appeal deprives a district court of jurisdiction over all issues relating to the subject matter thereof." *Wolfe v. Clarke*, 718 F.3d 277, 281 n.3 (4th Cir. 2013) (citing *In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991)). However, an interlocutory appeal of an order granting or denying preliminary injunction does not divest the district court of jurisdiction to proceed with matters extricable from the matters appealed. *See, e.g.*, *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 301–02 (4th Cir. 2000) (noting "the trial court has authority to pursue its own proceedings" pending "interlocutory appeals under [28 U.S.C.] § 1292"); *see also Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 519 (W.D.N.C. 1999). Therefore, as the Court is not deprived of jurisdiction to adjudicate the motions to dismiss before it, the Court will proceed with the matters extricable from those appealed.

Defendants move to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. and 12(b)(1) and 12(b)(6).

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009).

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

## III. DISCUSSION

Defendant City of Washington and Defendant Donald Sadler advance numerous arguments regarding both the justiciability and facial plausibility of plaintiff's claims. The Court addresses each in turn.

### A. Justiciability

Defendant City of Washington argues plaintiff lacks standing to pursue her claims due to pending proceedings before the City's Board of Adjustment. [DE 20] at 8–9. The Court notes the City submitted this argument on December 23, 2025—before the Board revoked plaintiff's special use permit on May 7, 2026. Now that the City's Board of Adjustment has revoked plaintiff's permit

and denied her appeal of the zoning violations, there are no pending proceedings regarding plaintiff's claims, and this argument fails.

Defendant Donald Sadler and Defendant City of Washington argue plaintiff lacks standing to pursue her claims because she lacks a concrete injury in fact. *See* [DE 18] at 15–16; [DE 20] at 8–11. To establish standing, a plaintiff "must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citation omitted). Plaintiff has shown that the City of Washington revoked her special use permit to operate her business, and that a favorable decision from this Court would likely provide redress. Plaintiff has shown injury in fact.

Defendant Donald Sadler next argues the injunctive and declaratory relief portions of plaintiff's First Amendment retaliation claim as to Donald Sadler are moot because plaintiff has replaced him in his official capacity as mayor. *See* [DE 18] at 17–18. Although plaintiff concedes this issue and recommends Count VI be dismissed as to Donald Sadler, [DE 23] at 13–14, the Court defers dismissal pending the issuance of the appellate mandate regarding the order granting preliminary injunction.

**B. Facial Plausibility**

*i. Count I: First Amendment Retaliation*

Defendants argue plaintiff fails to state a claim of First Amendment retaliation. *See* [DE 18] at 8–15; [DE 20] at 13–20. A plaintiff seeking to recover on a First Amendment retaliation claim must allege that "(1) she engaged in protected First Amendment activity, (2) the defendants

took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

For the reasons discussed in the Court's order granting plaintiff's motion for preliminary injunction, the Court disagrees that plaintiff fails to state a claim against Defendant City of Washington for First Amendment retaliation. *See* [DE 55] at 9–16. Regarding plaintiff's claim of First Amendment retaliation against Defendant Donald Sadler, out of an abundance of caution, the Court defers adjudication on this matter pending the issuance of the appellate mandate regarding the order granting preliminary injunction.

*ii. Count III: Substantive Due Process*

Defendant City of Washington argues plaintiff fails to state a claim for violation of federal and state substantive due process. *See* [DE 20] at 20–21; U.S. CONST. amend. XIV, § 1; N.C. CONST. art. I, § 1. The Court disagrees.

"The North Carolina Supreme Court interprets North Carolina's law of the land clause and the federal due process clause synonymously." *Frye v. Brunswick Cnty. Bd. of Educ.*, 612 F. Supp. 2d 694, 705 (E.D.N.C. 2009) (citing *State v. Bryant*, 359 N.C. 554, 563 (2005); *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180 (2004); *In re Moore*, 289 N.C. 95, 98 (1976)).

To establish a federal substantive due process violation, a plaintiff

> must demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. The third element requires plaintiffs to show that the challenged action had no foundation in reason and is a mere arbitrary on [sic] irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.

*Frye*, 612 F. Supp. 2d at 705 (citations and quotation marks omitted) (quoting *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir. 2008); *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995)).

When the rational basis standard meets the standard applied to a dismissal under Federal Rule of Civil Procedure 12(b)(6), the court "must take as true all of the complaint's allegations and reasonable inferences that follow" and "apply the resulting facts in the light of the deferential rational basis standard." *See Giarratano v. Johnson*, 521 F.3d 298, 303–04, (4th Cir. 2008) (discussing rational basis as it applies to equal protection) (internal marks omitted) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 459–60 (7th Cir. 1992)). In this posture, "[a] complaint's conclusory assertion that the challenged policy [i]s without rational basis [is] 'insufficient to overcome the presumption of rationality coupled with [a] readily apparent justification for the policy[.]" *Id.* at 304 (citations and quotation marks omitted).

Plaintiff has demonstrated that she has a property interest in her business. She has also demonstrated that the Ordinance has deprived her of her interest in operating her business as she pleases—to sell merchandise, to hire more than one employee, to host more than 24 guests, and to have outdoor events. Moreover, the Court finds—at this stage in the proceedings—that justifications for the challenged restrictions are not readily apparent. *See id.*

Accordingly, the Court concludes plaintiff has sufficiently alleged a claim for violation of substantive due process.

*iii. Count V: Fourteenth Amendment Equal Protection*

Defendant City of Washington argues plaintiff fails to state an equal protection claim because she lacks similarly situated comparators and she cannot show a lack of rational basis for the difference in treatment she has experienced. *See* [DE 20] at 21–22.

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Unequal treatment alone does not by itself qualify as an equal protection violation, because "[l]awmaking by its nature requires that legislatures classify, and classifications by their nature advantage some and disadvantage others." *Helton v. Hunt*, 330 F.3d 242, 245 (4th Cir. 2003). Rather, the Clause "only forbids arbitrary differentiations among groups of persons who are similar in all respects relevant to attaining the legitimate objectives of legislation." *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007).

To survive a motion to dismiss an equal protection claim, "a plaintiff must plead sufficient facts to demonstrate plausibly that [s]he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011). Equal protection claims brought by a "class of one" can succeed only where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Siena Corp. v. Mayor & City Council of Rockville Md.*, 873 F.3d 456, 465 (4th Cir. 2017) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "For a plaintiff to demonstrate that she is similarly situated, her evidence must show an extremely high degree of similarity between herself and the persons to whom she compares herself." *Willis v. Town of Marshall, N.C.*, 275 Fed. Appx. 227, 233 (4th Cir. 2008) (quotation marks omitted) (quoting *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir. 2006)).

Plaintiff's claim is based on the allegation the City has treated The Ell Hotel unequally from the other homes and businesses in her zoning district by placing restrictions on the number of employees, types of events, and number of guests that she may have on her property, and these

restrictions are the result of intentional or purposeful discrimination. *See* [DE 1] at 17–18. In fact, she alleges the city has taken no enforcement action against a business in her same zoning district, the "Mizpah Manor & Chapel," despite the fact it is hosting weddings and other events for 200-300 people at a time without a permit to do so. [DE 56] at 4–5. Conveniently, the business is owned by a city council member. *Id.*

The Court concludes plaintiff has sufficiently alleged she has been treated differently than others similarly situated, and that there is no rational basis for the difference in treatment.

*iv. Statute of Limitations*

Defendant City of Washington argues—to the extent plaintiff's claims challenge the special use permit or pre-2024 ordinances—they are barred by the statute of limitations. *See* [DE 20] at 24–25.

"The statute of limitations for all § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." *Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015). In North Carolina, the limitations period is three years. *Id.* at 67. When a section 1983 claim accrues is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "For most common-law torts, a plaintiff's cause of action accrues, and the limitations period commences, when the plaintiff knows or has reason to know of his injury . . . ." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 389 (4th Cir. 2014).

Plaintiff filed this action in October of 2025 because of the change to the bed & breakfast definition in the Zoning Ordinance, the issuance of zoning violation notices, and the police surveillance of plaintiff. Those events occurred in 2024 and 2025, well within the three-year statute of limitations. Thus, the statute of limitations does not bar plaintiff's claims.

*v. Abstention*

Finally, Defendant City of Washington argues this Court should abstain from adjudicating plaintiff's claims insofar as they depend on interpretation of the City's Zoning Ordinance because of the *Burford* abstention doctrine. *See* [DE 20] at 27–29.

Federal courts typically have an unflagging duty to exercise their jurisdiction to decide cases properly before them. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Abstention under *Burford* applies to federal courts sitting in equity

> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (citation and quotation marks omitted). *Burford* abstention has often been found to be appropriate in state and local land use and zoning cases because a federal decision would be disruptive of a state's establishment of a coherent policy with respect to a matter of public concern. *See, e.g.*, *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280–82 (4th Cir. 2008). However, zoning and land use cases do not automatically require federal courts to abstain under *Burford*. *See Washington Gas Light Co. v. Prince George's Cty. Council*, 711 F.3d 412, 419 (4th Cir. 2013).

The Court in its discretion determines that *Burford* abstention is not warranted in this case. This Court will not be required to answer difficult or disputed questions of state law, and strong state interest alone is an insufficient ground on which to abstain under *Burford*. *See Martin v. Stewart*, 499 F.3d 360, 369 (4th Cir. 2007). Moreover, the Court plainly has jurisdiction and may proceed to consider plaintiff's claims. *See, e.g.*, *Griffin Farm & Landfill, Inc. v. Town of Unionville*, No. 3:10-CV-250-RJC-DSC, 2012 WL 3257789, at *3 (W.D.N.C. Aug. 8, 2012)

(unpublished) (examining whether a party acquired a vested right under North Carolina law); *Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013) (citation omitted) (stating that an equal protection claim that intersected with the town's zoning law was "not merely 'state law in federal clothing.' ").

Mindful that the balance between federal and state interest "only rarely favors abstention," *Quackenbush*, 517 U.S. at 728, the Court determines that abstention under *Burford* is not appropriate in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES IN PART and DEFERS IN PART Defendant Donald Sadler's motion to dismiss [DE 17]. Specifically, the Court defers adjudicating the matter of plaintiff's requests for injunctive and declaratory relief as against Defendant Donald Sadler, as well as Count VI against him. The Court also defers adjudicating the matter of plaintiff's First Amendment retaliation claim as against Defendant Donald Sadler. The Court DENIES Defendant City of Washington's motion to dismiss [DE 19].

SO ORDERED, this 15 day of September, 2026.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE